**STATE ex PECSOK v DAVIS et**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 14503.   Decided April 22, 1935

Phillips & Falsgraf, for relator.

Ezra Z. Shapiro, Director of Law, Cleveland, Alfred Clum, Assistant Director of Law, Cleveland, and Gordon C. Locke, Assistant Director of Law, Cleveland, for respondents.

LEMERT, PJ, SHERICK and
MONTGOMERY, JJ, (5th Dist)
sitting by designation.

**OPINION**

By LEMERT, PJ.

Sec 2293-1-f GC defines current expenses as any lawful expenditure, except those for permanent mprovement and except payments for interest, sinking fund and retirement bonds, notes and certificates of indebtedness of the subdivision.

Sec 2293-1-f GC read with §2293-4, GC, clearly prohibits the delaying of payment beyond the semi-annual tax settlement. It was never the purpose of the legislation providing for current revenue notes to permit subdivisions to operate on borrowed money. In at least three places, the Legislature has in unqualified language provided that a municipality must live within its income.

The sole use of current revenue notes is to make it possible for a subdivision to borrow money for operating purposes until it received its semi-annual settlement.

Respondents answer would seem to raise the issue that no money passed in the Treasury Investment Account to the Oporating Fund. Evidently respondents hope that the confusion caused by commingling funds and bad business procedure will make the transactions so involved that it will be impossible to determine whether or not funds were transferred. However, in spite of this condition, this unlawful transfer of funds by use of unpaid current revenue notes is obvious.

The procedure followed in purchasing the current revenue notes by the Treasury Investment Account was to issue a receiving warrant authorizing the City Treasury to receive $1,250,000 for purchase of the current revenue note. This warrant acted in the dual capacity of putting $1,250,000 into the tax anticipation note account for the General Operating Fund, and to pay that amount out of the general cash account.

To say that there was no consideration for the current revenue notes is unreasonable indeed. The General Operating Fund received to its use and credit in January, 1932, $1,500,000 from the Sinking Fund Commission, and in August, 1932, $1,250,-000 from the Treasury Investment Account, which it used to pay the overdraft caused by the payment of the note held by the Sinking Fund Commission. The General Operating Fund used this money and to this day has not paid it back. The contention that the General Operating Fund never received this money is rendered absurd by the fact that interest has been paid on this obligation by the General Operating Fund. That fact alone is enough to estop the City to deny receipt of the money.

Whether or not an obligee had the right to loan money is no defense to the obligor, and for that reason we shall not go into a detailed discussion relative to the stat-

utes and ordinances authorizing a Treasury Investment Account or the various steps taken in making the loan. However, we have to say that the law has been faithfully complied with. In each instance before the current revenue note was purchased, the Director of Finance furnished to the Mayor and Director of Law, a statement of moneys in the treasury or in the process of collection and a schedule showing the probable requirements of money for the use of the city for such period not less than six months, and a recommendation that the current revenue note should be purchased. The Mayor, Director of Law and Director of Finance then ordered the purchase by the Treasury Investment Account of the current revenue note.

The money loaned to the General Operating Fund was not at the time of the loan in August, 1932, and has not been since that time a part of the General Operating Fund. This is clear for the reason that the General Operating Fund since before January, 1932, has not had any money which would not be used within six months. The facts as shown by the record are that at times the account has been overdrawn so far as $1,750,000, and continuously has not had enough to meet payrolls and bills due.

The money loaned could only be derived from some bond fund or one of the utilities funds. In other words, the securities held by the Treasury Investment Account were purchased with money from funds other than the General Operating Fund. The payment of the $1,250,000 and interest, will decrease the cash available for operating purposes and by that amount will increase the cash available for other funds.

There is a great deal of documentary evidence before this court and the briefs submitted are voluminous, but after all, this action resolves itself to a very simple proposition: Was a current revenue note issued for operating purposes? Did the General Operating Fund receive to its credit $1,250,000? Is this obligation still unpaid?.

From the record before us we are of the opinion that these questions should be answered in the affirmative and thus answering them in that way leads to but one conclusion, and that is that there is an obligation due and owing by the General Operating Fund, and this obligation should be paid and the only way to accomplish this upon the refusal of the officials of the City of Cleveland, is to command them to issue a voucher and check to the bearer of the unpaid revenue note for the face amount of the note and accrued interest.

So we find that the Treasury Investment Account is a separate and distinct entity from the General Operating Fund; that money was borrowed by the General Operating Fund and said fund has been enriched to the extent of $1,250,000, and that the said money is due and owing to the Treasury Investment Account; and that the failure to pay this note is contrary to the clear mandate of the law and permits the use of money which belongs to other funds for the General Operating Fund, and that a writ of mandamus should issue compelling the payment of the $1,250,000 out of the General Operating Fund to the Treasury Investment Fund.

So entertaining the views hereinbefore expressed, a writ of mandamus will issue as prayed for in the amended petition for the payment of $1,250,000 owing by the City to Cleveland to the Treasury Investment Account for distribution among the several funds from which it was taken. Exceptions may be noted. Motion for new trial, if filed, overruled. Exceptions.

SHERICK and MONTGOMERY, JJ, concur.